| | |
|---|---|
| **MARTIN SCAHILL, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 16-2076 (JDB)** |
| **DISTRICT OF COLUMBIA, et al.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiffs Martin Scahill and HRH Services, LLC filed this suit under 42 U.S.C. § 1983, challenging conditions placed on a liquor license issued to HRH for its restaurant, the Alibi, by the District of Columbia Alcoholic Beverage Control Board ("Board"). The conditions essentially prevent Scahill from entering the premises or playing any role in the business, which plaintiffs claim violates a number of their constitutional rights. Currently before the Court is [10] defendants' motion to dismiss for lack of standing and for failure to state a claim. For the following reasons, the motion will be granted, and plaintiffs' claims will be dismissed.

## I. BACKGROUND

The following facts are taken from plaintiffs' complaint. In January 2015, HRH Services, owned by Rachel and Richard Traverso, applied to the ABC Board for a "New Retailer's Class CR License" for the Alibi restaurant. Am. Compl. [ECF No. 9] ¶¶ 11–12. The Board approved the liquor license on May 18, 2016, subject to certain conditions that restricted Scahill's involvement in HRH's business. Id. ¶ 13; see also Board Order No. 2016–280 ("Board Order")

[ECF No. 10-1] at 23, 36.[1]  Scahill is not an owner of HRH or the Alibi, but is the guarantor on the Alibi's lease.  Am. Compl. ¶¶ 12, 41.  In addition, Scahill is the former owner of My Brother's Place, the restaurant that previously occupied the space in which the Alibi is located, and was the applicant listed on a prior liquor license application filed by Melles Hospitality Group.  Id. ¶ 13.

Under the terms of the liquor license, awarded to HRH by the Board, HRH must execute and maintain a barring notice against Scahill prohibiting him from entering or accessing the Alibi for five years, and must notify D.C. police within 24 hours if any violation of the barring notice occurs.  Id. ¶ 13; Board Order at 24, 36.  HRH is also prohibited from transferring ownership of the Alibi to Scahill, and from permitting Scahill to obtain an interest in the business, in the Alibi, or in the license.  Am. Compl. ¶ 13; Board Order at 24, 36.  Finally, HRH is prohibited from employing Scahill in any capacity, either in its business or at the Alibi; from giving Scahill access to or control over the business's financial accounts; and from allowing Scahill to "volunteer" for the organization.  Am. Compl. ¶ 13; Board Order at 36–37.  Any violation of these conditions could result in revocation of the liquor license.  Am. Compl. ¶ 13; Board Order at 37.

On May 31, 2016, HRH moved the Board for reconsideration of these conditions, which the Board denied on June 29, 2016.  Am. Compl. ¶¶14–15.  Scahill filed a petition for review of the Board's order with the D.C. Court of Appeals on July 27, 2016.  Id. ¶ 16.[2]  On October 6, 2016 the Board issued a Notice of Status and Show Cause Hearing to HRH, alleging that Scahill had been seen at the Alibi on June 10, 2016, in violation of the conditions placed on the liquor license. Id. ¶ 17.  The Notice charged HRH with failing to follow the Board's order, and threatened to revoke HRH's license.  Id.  Plaintiffs allege that the Board's action was in retaliation for their

_____

[1] The Board's order is attached to defendants' motion to dismiss as Exhibit A.
[2] This appeal is ongoing.  See Scahill v. D.C. Alcoholic Beverage Control Bd., No. 16–AA–755 (D.C. filed July 28, 2016).

appeals. Id. HRH and Scahill then filed this lawsuit on October 18, 2016. Id. ¶ 18. Allegedly in retaliation for filing this suit, the Board issued a second Notice of Status and Show Cause hearing to HRH on November 7, 2016, asserting that Scahill had been seen at the Alibi on July 8, 2016. Id. ¶ 19.

Plaintiffs bring claims against the Board, the District of Columbia, and ten unnamed "John Doe" defendants under 42 U.S.C. § 1983, seeking declaratory and injunctive relief as well as damages. Plaintiffs allege that the conditions placed on the liquor license violate their First Amendment rights to freedom of speech and freedom of association, and that the Board issued the show cause orders to HRH in retaliation for plaintiffs' exercise of their First Amendment rights. In addition, plaintiffs claim that the order violates their Fifth Amendment rights to liberty, due process, and freedom of movement, and that the Board's order violates the unconstitutional conditions doctrine. Id. ¶¶ 20–52. Defendants—the District of Columbia and the Board—filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing that plaintiffs lack standing and have failed to state a claim.[3]

## II. DISCUSSION

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative

---

[3] The initial complaint in this case, which included the John Doe defendants, was filed on October 18, 2016. Compl. [ECF No. 1]. However, the John Doe defendants were never identified and served. Although it is unclear from the face of the complaint, see Am. Compl. ¶ 10, the Court deems the complaint as naming the John Does in their personal rather than their official capacity. So construed, it appears that plaintiffs have failed to effect service within the 90 days required by Federal Rule of Civil Procedure 4(m). The Court will therefore issue a show cause order as to why the claims against the John Doe defendants should not be dismissed, without prejudice, for failure to effect service. See Brown v. District of Columbia, 514 F.3d 1279, 1286 (D.C. Cir. 2008) (holding that plaintiff must be "actually [or] constructively on notice as to [an] impending sua sponte dismissal" under Rule 4(m)).

level." Twombly, 550 U.S. at 555. "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are therefore insufficient to withstand a motion to dismiss." BEG Invs., LLC v. Alberti, 144 F. Supp. 3d 16, 21 (D.D.C. 2015) (quoting Iqbal, 556 U.S. at 678). "A court need not accept a plaintiff's legal conclusions as true nor must a court presume the veracity of any legal conclusions that are couched as factual allegations." Id. (citing Twombly, 550 U.S. at 555). Nor must a court accept as true a plaintiff's factual allegations "insofar as they contradict exhibits to the complaint or matters subject to judicial notice." Kaempe v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004).

Defendants argue that plaintiffs lack standing to challenge the conditions imposed on the liquor license because HRH voluntarily stipulated to these conditions, as reflected in the Board's order and findings of fact. Defendants also claim that the Board is non sui juris (meaning it cannot be sued independently), and that plaintiffs have failed to allege an unconstitutional custom or policy that would enable them to bring suit against the District. See Mot. to Dismiss at 2–3. On the merits, defendants argue that plaintiffs have failed to allege enough facts to support any of their claims. Id. at 2. The Court will consider each argument in turn.

### A. JUDICIAL NOTICE

At the outset, the Court must briefly discuss which documents it may consider in evaluating the motion to dismiss. Defendants' arguments regarding standing depend heavily on findings in the Board's order imposing the license conditions, which defendants have attached to their motion to dismiss. See Board Order. Defendants have also provided the Board's order denying the motion for reconsideration, a D.C. Court of Appeals order denying HRH's petition for review of the Board's order, and Scahill's petition for review of the Board's order. See Exs. B–D, Mot. to Dismiss [ECF Nos. 10-2 to 10-4]. Plaintiffs argue that defendants "improperly" attached these

documents to their motion to dismiss, and that the Court may not consider in particular the Board's principal order, as it is outside the pleadings and not "integral" to the complaint. The Court disagrees, for several reasons.

The argument that the Board's principal order imposing the license conditions is not "integral" to plaintiffs' complaint is entirely unsupportable—the complaint quotes this order at length, and it is the basis for most of plaintiffs' claims. See, e.g., Am. Compl. ¶¶ 13, 22–25, 31–32, 34–36, 40–45, 48–52. As the Board's order is appended to the motion to dismiss, referred to in the complaint, integral to plaintiffs' claims, and undisputed as to its authenticity, the order may be considered here. See Kaempe, 367 F.3d at 965.

In addition, the Board's order, the order denying the motion for reconsideration, and the documents from the D.C. Court of Appeals are public records relevant to plaintiffs' complaint and subject to judicial notice on a motion to dismiss. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997); Grant v. Dep't of Treasury, 194 F. Supp. 3d 25, 28 n. 2 (D.D.C. 2016) (noting that "the Administrative Judge's Initial Decision, Treasury's Final Agency Decision, and [the Merit System Protection Board]'s Final Order are official, public documents subject to judicial notice"); BEG Invs., 144 F. Supp. 3d at 19 n.3 (taking judicial notice of ABC Board orders which were official public documents, pertinent to plaintiff's claims, and attached to defendant's motion to dismiss); Hinton v. Corr. Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (noting that on a motion to dismiss, courts may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss" (internal quotations omitted)).

Finally, the Court may consider matters outside the pleadings in resolving challenges to its subject matter jurisdiction under Rule 12(b)(1). See Advance Am. v. FDIC, —F. Supp. 3d—,

2017 WL 2869918, at *2 (D.D.C. 2017). A lack of standing constitutes "a defect in [the Court's] subject matter jurisdiction," Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987), and in considering jurisdiction, the court "may rest its decision on its own resolution of disputed facts." Advance Am., 2017 WL 2869918, at *2 (citing Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 197 (D.C. Cir. 1992)). Because defendants challenge plaintiffs' standing here, the Court may look to matters outside the pleadings, including the Board's orders, to determine whether plaintiffs have standing to allege their claims. Accordingly, the Court will take judicial notice of the Board's order and of the other orders attached to defendants' motion to dismiss.

### B. STANDING

A plaintiff "bears the burden of showing that he has standing," Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009), and "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought," Town of Chester v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017) (citation omitted). "The 'irreducible constitutional minimum of standing contains three elements': (1) injury-in-fact, (2) causation, and (3) redressability." Commuter Rail Div. of Reg'l Transp. Auth. v. Surface Transp. Bd., 608 F.3d 24, 30 (D.C. Cir. 2010) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Plaintiffs must plead or prove each element of standing "with the requisite 'degree of evidence required at the successive stages of the litigation.'" In re Science Applications Int'l Corp. Backup Tape Data Theft Litig. ("SAIC"), 45 F. Supp. 3d 14, 23 (D.D.C. 2014) (quoting Lujan, 504 U.S. at 561). Thus, at the motion to dismiss stage, "[p]laintiffs must plead facts that, taken as true, make the existence of standing plausible." Id. (emphasis in original). When considering standing, the Court "must be 'careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits

the plaintiffs would be successful in their claims.'" In re Navy Chaplaincy, 534 F.3d 756, 760 (D.C. Cir. 2008) (quoting City of Waukesha v. EPA, 320 F.3d 228, 235 (D.C. Cir. 2003)).

1. HRH's Standing

Defendants assert briefly that plaintiffs have not suffered an injury in fact because they have not shown that the conditions imposed on the license actually harmed them. Mot. to Dismiss at 11. Defendants also argue, based on the evidence from the Board's order that HRH voluntarily executed a barring notice against Scahill, that the conditions in the liquor license are a "self-inflicted injury" caused by HRH and not fairly traceable to the Board. Id. at 11–12. Scahill's injuries, in turn, are therefore traceable to HRH rather than to the Board. Id. at 12. In other words, defendants argue that plaintiffs have a causation problem. See, e.g., Ellis v. Comm'r of IRS, 67 F. Supp. 3d 325, 336 (D.D.C. 2014) ("[I]t is well-settled in this jurisdiction that self-inflicted injuries—injuries that are substantially caused by plaintiff's own conduct—sever the causal nexus needed to establish standing.").

As it turns out, there is no need to decide this issue as it relates to HRH, because another court has already done so. After the Board denied HRH's motion for reconsideration, HRH appealed the Board's order to the D.C. Court of Appeals under the District of Columbia Administrative Procedure Act's ("DCAPA") judicial review provision. See D.C. Code § 2–510(a). The court issued a show cause order "directing [HRH] to show cause why the petition for review should not be dismissed for lack of standing." HRH Servs., Inc. v. D.C. Alcoholic Beverage Control Bd., No. 16–AA–758 (D.C. Oct. 13, 2016) (Ex. C, Mot. to Dismiss [ECF 10–3]). HRH filed a response, but the court ultimately dismissed the petition for lack of standing. Id. While the court did not lay out every step of its reasoning, it noted that the Board had required HRH to

"enforce the barring notice it had issued against Martin Scahill, a person <u>not affiliated with the business</u> according to [HRH's] own statements below." <u>Id.</u> (emphasis added).[4]

The DCAPA only allows review of agency actions when a party has suffered "a legal wrong, or [is] adversely affected or aggrieved." D.C. Code § 2–510(a). The D.C. Court of Appeals has interpreted this language to require the same elements of standing that federal courts apply under Article III of the U.S. Constitution. <u>See Mallof v. D.C. Bd. of Elections and Ethics</u>, 1 A.3d 383, 394–95, 394 n.51 (D.C. 2010); <u>see also Friends of Tilden Park, Inc. v. District of Columbia</u>, 806 A.2d 1201, 1206 (D.C. 2002) ("Congress did not establish this court under Article III of the Constitution, but we nonetheless apply in every case the constitutional requirement of a case or controversy and the prudential prerequisites of standing." (quoting <u>Speyer v. Barry</u>, 588 A.2d 1147, 1160 (D.C. 1991)) (internal quotation marks omitted)). In particular, the party seeking review must show that it suffered an injury in fact, <u>Mallof</u>, 1 A.3d at 394, which is determined by "look[ing] to federal standing jurisprudence," <u>Friends of Tilden Park</u>, 806 A.2d at 1206 (citation and internal quotation marks omitted). The D.C. Court of Appeals relied on the injury-in-fact requirement in its order dismissing HRH's petition. <u>HRH Servs.</u>, No. 16–AA–758 ("A party has not been . . . aggrieved by agency action unless [there is] some actual or threatened 'injury in fact' from the challenged agency action." (citation omitted)).

Because another court has already determined that HRH lacks Article III standing to challenge the Board's order, this Court must determine whether issue preclusion (collateral estoppel) prevents HRH from asserting standing on claims related to the order. <u>See Nat'l Ass'n of Home Builders v. EPA</u>, 786 F.3d 34, 41 (D.C. Cir. 2015) ("Issue preclusion applies to threshold

---

[4] The Court of Appeals' order was summary in nature, but this does not affect the following preclusion analysis. <u>See Yamaha Corp. of Am. v. United States</u>, 961 F.2d 245, 254 (D.C. Cir. 1992) ("In issue preclusion, it is the prior <u>judgment</u> that matters, not the court's opinion explicating the judgment.").

jurisdictional issues like standing . . . ."). Defendants did not raise this question in their motion to dismiss. But because issue preclusion "belongs to courts as well as to litigants, even a <u>party</u>'s forfeiture of the right to assert it—which has not happened here because the defendant[s] remain[] free to file an answer—does not destroy a <u>court</u>'s ability to consider the issue sua sponte." <u>Stanton v. D.C. Court of Appeals</u>, 127 F.3d 72, 77 (D.C. Cir. 1997) (emphasis in original); <u>see</u> <u>U.S. Bank Nat'l Ass'n v. Poblete</u>, —F. Supp. 3d—, 2016 WL 1089217, at *11 (D.D.C. Mar. 18, 2016) (applying same rule to collateral estoppel); <u>Amore ex rel. Estates of Amore v. Accor, S.A.</u>, 484 F. Supp. 2d 124, 129 (D.D.C. 2007) (same); <u>Burlington Res. Oil & Gas Co. v. U.S. Dep't of the Interior</u>, 21 F. Supp. 2d 1, 4 n. 4 (D.D.C. 1998) (same).

Three things must be true for issue preclusion to apply: "'[1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2], the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case[; and 3], preclusion in the second case must not work a basic unfairness to the party bound by the first determination.'" <u>Martin v. Dep't of Justice</u>, 488 F.3d 446, 454 (D.C. Cir. 2007) (alterations in original) (quoting <u>Yamaha Corp.</u>, 961 F.2d at 254).[5]

Each of these requirements was satisfied here. The D.C. Court of Appeals issued a show cause order on the precise issue in question, and HRH filed a brief in its own defense. <u>See</u> <u>HRH Servs.</u>, No. 16–AA–758. The standing question was therefore "contested" and "submitted for judicial determination." <u>Martin</u>, 488 F.3d at 454. It is also clear that the standing issue was

---

[5] "[I]t is unclear whether the law of collateral estoppel is procedural or substantive for the purposes of applying federal or D.C. law . . . ." <u>Melara v. China N. Indus., Corp.</u>, 658 F. Supp. 2d 178, 182 n.6 (D.D.C. 2009) (citation and internal quotation marks omitted). <u>But cf.</u> <u>Stanton</u>, 127 F.3d at 77 ("We give judgments of other courts the same preclusive effect as would the issuing court—in this case, the D.C. Court of Appeals."). However, "the rules of each jurisdiction are substantially similar. . . . The extra consideration required under federal law—whether applying collateral estoppel would work a basic unfairness—would not affect its application in this case," as shown by the unfairness analysis below. <u>Melara</u>, 658 F. Supp. 2d at 182 n.6 (citation and internal quotation marks omitted); <u>accord</u> <u>Williams v. Johnson</u>, 701 Supp. 2d 1, 19 n.8 (D.D.C. 2010); <u>see</u> <u>Walker v. FedEx Office & Print Servs., Inc.</u>, 123 A.3d 160, 164 (D.C. 2015) (applying D.C. law of collateral estoppel).

"actually and necessarily determined": the court dismissed the petition for review <u>because</u>—and only because—it concluded that HRH lacked standing. <u>HRH Servs.</u>, No. 16–AA–758. And there is no doubt that the D.C. Court of Appeals is a court of competent jurisdiction to review D.C. agency orders. <u>See</u> D.C. Code § 2–510(a) (authorizing D.C. Court of Appeals to hear petitions for review of agency orders); <u>Lightfoot v. Cendant Mortg. Corp.</u>, 137 S. Ct. 553, 560 (2017) ("A court of competent jurisdiction is a court with the power to adjudicate the case before it."). Finally, a finding of preclusion here does not "work a basic unfairness" to HRH. <u>Martin</u>, 488 F.3d at 454. Because the D.C. Court of Appeals specifically asked HRH to address the standing issue if it wished to avoid dismissal, HRH's "incentives to litigate the point now disputed were no less present in the prior case." <u>Id.</u> at 455. "[N]or are the stakes of the present case of 'vastly greater magnitude,'" since both cases challenge the same Board order, with the same potential set of consequences for HRH should it lose. <u>Id.</u> Therefore, collateral estoppel applies. HRH lacks standing to bring any claims that directly challenge the Board's order.

This is not the end of the matter, however. Since the Court finds that Scahill has standing, <u>see infra</u> at p. 17, most of plaintiffs' claims can go forward. <u>See</u> <u>Carpenters Indus. Council v. Zinke</u>, 854 F.3d 1, 9 (D.C. Cir. 2017) ("If constitutional standing 'can be shown for at least one plaintiff, we need not consider the standing of the other plaintiffs to raise that claim.'" (quoting <u>Mountain States Legal Found. v. Glickman</u>, 92 F.3d 1228, 1232 (D.C. Cir. 1996))). But HRH's standing bar does signal last call for its unconstitutional conditions claim. At first, it is unclear whether plaintiffs bring this claim only with respect to HRH, or with respect to both HRH and Scahill. The complaint alleges that the Board's unconstitutional conditions injured Scahill as the guarantor on the lease for the Alibi. Am. Compl. ¶ 52. Yet the heading for this count in the complaint indicates that only HRH is asserting an unconstitutional conditions claim, not Scahill.

Id. at 14.  And whereas Counts I and II state that <u>both</u> "[p]laintiffs reallege and incorporate by reference" the prior allegations in the complaint, <u>id.</u> ¶¶ 20, 29, Count IV states that only "Plaintiff HRH Services LLC" does so, <u>id.</u> ¶ 47 (emphasis added).[6]  Moreover, in order to assert a claim under the unconstitutional conditions doctrine, a plaintiff must allege that the government has conditioned receipt of a benefit on the curtailment of the plaintiff's constitutional rights.  <u>See</u> <u>Autor v. Pritzker</u>, 740 F.3d 176, 183 (D.C. Cir. 2014).  Plaintiffs do not allege that Scahill has received or been denied any government benefit.  <u>Id.</u> ¶¶ 47–52.  Because of this, and because the complaint states on its face that the unconstitutional conditions claim only applies to HRH, the Court determines that this claim has been brought with respect to HRH alone.  Since HRH does not have standing, Count IV of the complaint will be dismissed.

### 2.  Scahill's Standing

The D.C. Court of Appeals' decision dismissed only <u>HRH's</u> case for lack of standing, and therefore the decision does not preclude <u>Scahill's</u> standing to challenge the license conditions.[7]

---

[6] The due process claim in Count III, which Scahill alone brings, likewise states that only "Plaintiff Scahill" does the re-alleging and incorporation there.  Am. Compl. ¶ 38.

[7] Scahill has brought his own appeal of the Board's order to the D.C. Court of Appeals.  <u>See</u> <u>Scahill</u>, No. 16–AA–755.  According to plaintiffs, Scahill argues "that the ABC Board exceeded its statutory authority, failed to comply with the D.C. Administrative Procedures Act, and acted arbitrarily and capriciously."  Pls.' Opp'n [ECF No. 11-1] at 5 n.2.  Plaintiffs were not required, as a matter of exhaustion doctrine, to see Scahill's appeal through before bringing their Section 1983 claims in this Court.  <u>See</u> <u>Dist. Props. Assocs. v. District of Columbia</u>, 743 F.2d 21, 27 (D.C. Cir. 1984).  But this unusual procedural posture creates a different concern.  Though defendant did not raise the issue, there is a colorable argument for abstaining as to the constitutional claims regarding the order itself, under <u>Railroad Commission of Texas v. Pullman Co.</u>, 312 U.S. 496 (1941).  <u>See</u> <u>Askew v. Hargrave</u>, 401 U.S. 476, 478 (1971) (holding that abstention may be called for when a state-court case brings state-law "claims, [which,] if sustained, will obviate the necessity of determining the [constitutional] question"); <u>see also</u> <u>Bellotti v. Baird</u>, 428 U.S. 132, 143 n.10 (1976) ("[A]bstention may be raised by the court [s]ua sponte."); <u>Justice v. Superior Court</u>, 732 F.2d 949, 950 (D.C. Cir. 1984) (applying <u>Pullman</u> abstention to the District of Columbia).

However, abstention is not warranted here.  Most importantly, for <u>Pullman</u> abstention to apply, the state law at issue must be "uncertain."  <u>Harman v. Forssenius</u>, 380 U.S. 528, 534 (1965).  "If the state statute in question . . . is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction."  <u>Id.</u> at 534–35.  There is no information before the Court indicating what Scahill's exact claims are in relation to D.C. law, and whether they are viable.  It is therefore not clear whether the code provisions Scahill invokes are uncertain.  Without such knowledge, it would be improper to abstain.  It is also relevant that the District of Columbia did not raise the abstention issue itself.  <u>See</u> <u>Ohio Bureau of Emp't Servs. v. Hodory</u>, 431 U.S. 471, 480 (1977) (noting, in context of <u>Younger</u> abstention, that "[i]f the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal

However, his standing may be difficult to establish, because the Board's order does not directly regulate Scahill. The parties do not address this specific issue with respect to standing, but as standing is necessary to the Court's jurisdiction, the Court has an obligation to consider it. <u>See, e.g.</u>, <u>Lee's Summit v. Surface Transp. Bd.</u>, 231 F.3d 39, 41 (D.C. Cir. 2000) ("When there is doubt about a party's constitutional standing, the court must resolve the doubt, <u>sua sponte</u> if need be."). Standing is "substantially more difficult to establish" when the plaintiff is not "the object of the government action or inaction" challenged. <u>Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.</u>, 489 F.3d 1279, 1289 (D.C. Cir. 2007) (quoting <u>Lujan</u>, 504 U.S at 562). Where not directly regulated by a challenged government regulation, a plaintiff must show that there is a "substantial probability" that he will be harmed as a result of the rule. <u>See</u> <u>Stillwell v. Office of Thrift Supervision</u>, 569 F.3d 514, 518 (D.C. Cir. 2009) (quoting <u>St. John's United Church of Christ v. FAA</u>, 520 F.3d 460, 462 (D.C. Cir. 2008)).

The Board's order requires the <u>license holder</u>—HRH—to maintain the barring notice against Scahill and to enforce it through the measures the Board sets out. <u>See</u> Am. Compl. ¶ 13; Board Order at 36–37. On the face of the order, then, there are no consequences for Scahill if HRH does not comply with these conditions. Moreover, the Board has not ordered HRH to do anything to Scahill that it could not otherwise do legally—absent the order, HRH would be free to maintain a barring notice against Scahill, decline to employ him, and otherwise decline to associate with him.

---

court force the case back into the State's own system"). Finally, abstention in this case would only partially serve the judicial economy interests it normally protects, since plaintiffs' First Amendment retaliation claims would not be affected by the D.C. Court of Appeals' ruling in any event and therefore would not be stayed. <u>See</u> <u>BEG Invs., LLC v. Alberti</u>, 34 F. Supp. 3d 68, 79 (D.D.C. 2014) (refusing to abstain because some of plaintiff's claims would remain unaffected by the state-court decision).

That being said, while Scahill may not be the primary object of the Board's order, he is certainly a secondary object. The basic purpose of the license conditions is to keep Scahill and HRH apart, when they apparently wish to work together. The effect of the Board's order is that Scahill cannot set foot in the Alibi (without risking arrest), cannot work there, and cannot obtain an interest in the business. Scahill also alleges that he is the guarantor on the Alibi's lease, and that the order barring him from the premises prevents him from playing a role in the business and managing the liability to which he is exposed as the guarantor. Am. Compl. ¶ 41. This could constitute harm, and while this harm is contingent on HRH complying with the terms of the Board's order, the consequence of HRH's non-compliance—revocation of its license—suggests that HRH is likely to enforce the terms of the Board's order, making this harm a "substantial probability."[8] At this stage, plausibility is all that is required. See SAIC, 45 F. Supp. 3d at 23.[9]

The second question is whether Scahill's alleged injuries are "fairly traceable" to the Board. A defendant need not be the "but-for cause" of a plaintiff's injuries; an action may be fairly traceable to the defendant even if defendant's action indirectly caused plaintiff's harm, although this makes the burden of establishing standing heavier. See, e.g., Massachusetts v. EPA, 549 U.S. 497, 524 (2007) (causation may be established where defendant caused an "incremental" part of the alleged injury); Cmty. for Creative Non-Violence v. Pierce, 814 F. 2d 663, 669 (D.C. Cir. 1987) (causation may be established where a defendant's actions are "a substantial factor motivating the third parties' actions"). When a third party bears some responsibility for the plaintiff's harm, standing may be established where, for example, "the record present[s] substantial

_____

[8] The fact that allegations have been made in the Board's show cause orders that HRH has not been enforcing the terms of the Board's order does not, at the motion to dismiss stage, affect the likelihood of harm.

[9] It would create quite the catch-22 to deny HRH standing because the D.C. Court of Appeals apparently believed that Scahill (rather than HRH) was the one injured by the Board's order, while at the same time determining that Scahill doesn't have standing because HRH (rather than he) was the one harmed.

evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and the likelihood of redress." Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 941 (D.C. Cir. 2004).

This is where the Board's order comes in. According to the Board's findings of fact, Scahill was a minority owner of My Brother's Place, the bar that preceded the Alibi at 237 2nd Street in Northwest D.C. The Board's records showed that My Brother's Place owed approximately $16,500 in fines for repeated violations of law, including multiple incidents of selling alcohol to large numbers of minors. Board Order at 1–3, ¶¶ 7–29, 32. When the bar's license lapsed in 2013, these fines were still unpaid. Id. at 2, ¶¶ 35, 49. After My Brother's Place closed, Scahill created a business named HRH, LLC t/a My Place in 2012, ostensibly for the purpose of starting a restaurant with his then-fiancée, Rachel Traverso. Id. ¶¶ 37–39. When this plan fell through, Melles Hospitality Group, LLC, t/a The Alibi Restaurant & Lounge (MHG), a company in which Scahill also had an ownership interest, assumed the lease at 237 2nd Street. Id. MHG then applied for a liquor license at this location. Id. ¶ 39. When the Board issued a notice raising concerns about Scahill's fitness for licensure based on the outstanding fines and violations that had occurred at My Brother's Place, MHG withdrew its application. Id. ¶¶ 52–67.

Rachel Traverso created the current business named HRH in 2014. Id. ¶ 69. This HRH (the current plaintiff) then filed for a liquor license for the Alibi at the 237 2nd Street location, identifying both Rachel and Richard Traverso, her father, as the sole owners of the business. Id. ¶¶ 53–54. But Scahill apparently worked for the business several days a week, id. ¶¶ 71–77, and the Board therefore sought evidence that HRH, not Scahill, was the "true and actual owner" of the Alibi; that this was not a fraudulent attempt by Scahill to obtain a license; and that Scahill had in fact separated from the business, id. ¶¶ 79–80. Richard Traverso then executed a barring notice

against Scahill on January 27, 2016, two days before the hearing on the license took place, which prohibits Scahill from entering the Alibi for five years. The Traversos presented the barring notice at the hearing as evidence that HRH had separated itself from Scahill, indicated that they were willing to enforce the barring notice by calling the police, and noted that, while the barring notice was in effect, it would prevent Scahill from working at the restaurant. Id. ¶¶ 83–88. The Traversos proposed that conditions be added to the license in order to ensure enforcement of this barring notice "if the Board deem[ed] necessary," but did not specify the conditions or propose language for the conditions. Id. ¶ 90.

Significantly, plaintiffs do not allege any facts in their complaint that dispute these Board findings; indeed the complaint does not mention HRH's role in the barring notice or imposition of the conditions at all. Plaintiffs argue in their opposition brief that it is "disputed" whether HRH voluntarily agreed to the license conditions, Pls. Opp'n at 11, but there is nothing in the complaint that states this. In light of these facts, the standing issue becomes an even closer question. Based on the Board's order, and absent factual allegations that dispute the Board's findings, it appears that HRH played a role in bringing about the conditions imposed on the license. At the same time, however, it appears that the Board suggested HRH might not receive a license if HRH did not take steps to bar Scahill from the business. The Board also had some independent role in crafting and imposing the conditions: the Board was only to impose conditions on the license if it decided they were "necessary," and came up with the conditions and the language of the conditions itself. Board Order ¶ 93.

"Standing is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain." 13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction § 3531.5 (3d ed. 2004); see also Petro-Chem Processing, Inc.

v. EPA, 866 F.2d 433, 438 (D.C. Cir. 1989) ("[T]o the extent that this injury is self-inflicted, it is so completely due to the [complainant's] own fault as to break the causal chain." (internal quotations omitted) (alteration in original)).  The D.C. Circuit appears to find self-inflicted injury mainly in those cases where the plaintiff's claimed injury was clearly independent of agency action.  See, e.g., Grocery Mfrs. Ass'n v. EPA, 693 F.3d 169, 177 (D.C. Cir. 2012) (plaintiffs' costs and liabilities associated with introducing a new fuel were not traceable to EPA regulation because the regulation only permitted, but did not require "or even encourage," covered entities to introduce the new fuel); Bhd. of Locomotive Eng'rs & Trainmen v. Surface Transp. Bd., 457 F.3d 24, 28 (D.C. Cir. 2006) (union's inability to bargain over a particular transaction was due to the terms of the union's collective bargaining agreement with the railroad, and not traceable to the agency's action); Petro-Chem Processing, 866 F.2d at 438 (potential liability from unsafe disposal of hazardous waste was not traceable to agency action because agency did not require use of the disposal method at issue).

Here, the Board issued an order requiring HRH to comply with the conditions of the license, or else the license would be revoked.  The extent to which HRH voluntarily agreed to the specific conditions as imposed is unclear from the Board's order.  But this is not a case in which plaintiffs' claimed injury occurred completely independently of the agency action.  Indeed, plaintiffs allege (albeit in a somewhat conclusory fashion) that, "[a]t all times relevant, HRH Services LLC was coerced by the D.C. government to bar Mr. Scahill."  Am. Compl. ¶ 7.  Based on both the order and plaintiffs' complaint, it is plausible that HRH felt pressured to cut Scahill out of the business by the Board's suggestion that Scahill was unfit for licensure, or that the Board imposed conditions on the license that went beyond what HRH thought it was agreeing to.[10]

_____

[10] Indeed, to conclude otherwise would be to decide the merits of part of plaintiffs' claims, which the Court "must be careful not to decide" when analyzing standing.  In re Navy Chaplaincy, 534 F.3d at 760 (citation omitted).

Assuming at this stage that HRH did not voluntarily agree to the license conditions, if Scahill is harmed because HRH enforces the license conditions that the Board's order compels it to enforce, there can be little doubt that the Board's order was a "substantial factor" motivating HRH's conduct. Thus, Scahill has plausibly alleged that his alleged injuries are fairly traceable to defendants.

Lastly, with respect to redressability, to the extent that Scahill alleges that the Board's order infringes on his constitutional rights by effectively preventing him from associating with or working for HRH, from obtaining an interest in the business, and from going to the Alibi, the Court can redress this harm by enjoining the Board's order and awarding Scahill damages. Accordingly, Scahill has plausibly alleged standing to challenge the license conditions.

3. Retaliation Claims

Finally, the Court notes that defendants do not appear to challenge plaintiffs' standing to bring their First Amendment retaliation claims. The D.C. Court of Appeals' standing decision only dealt with HRH's challenge to the Board's order itself, not to the alleged retaliation, which in any case occurred after that court dismissed HRH's petition for review. And the argument that HRH voluntarily agreed to the license conditions has no bearing on whether the Board took retaliatory action against plaintiffs for appealing the Board's order and filing this suit. Even if HRH had agreed to the license conditions, and plaintiffs challenged the order anyway, any later action the Board may have taken against plaintiffs because of plaintiffs' exercise of their First Amendment rights would constitute an injury fairly traceable to defendants. Moreover, this injury would be redressable through an injunction against defendants or damages awarded to plaintiffs. The Court is therefore satisfied that plaintiffs have standing to bring their retaliation claims.

C. **PROPER DEFENDANTS**

1. <u>The Board</u>

Defendants claim that the Board cannot be sued as an independent entity; in other words, only the District can be held liable for the Board's actions. "Certain government entities are not suable because they are not entities 'which Congress has authorized to be sued.'" <u>Miango v. Democratic Republic of the Congo</u>, No. CV 15-1265 (ABJ), 2017 WL 1091873, at *5–6 (D.D.C. Mar. 22, 2017) (quoting <u>Blackmar v. Guerre</u>, 342 U.S. 512, 515 (1952)). "[I]n the absence of explicit statutory authorization, bodies within the District of Columbia government are not suable as separate entities." <u>Sibley v. U.S. Supreme Court</u>, 786 F. Supp. 2d 338, 344 (D.D.C. 2011) (alteration in original) (internal quotations omitted); <u>see also</u> <u>Braxton v. Nat'l Capital Hous. Auth.</u>, 396 A.2d 215, 216–17 (D.C. 1978) (noting that "[c]ases in this jurisdiction have consistently found that bodies within the District of Columbia government are not suable as separate entities" unless Congress established the entity as sui juris).

There appears to be no explicit statutory language in the D.C. Code authorizing the Board to sue or be sued. Plaintiffs have not identified any, nor have they identified language authorizing suit by implication. <u>Compare</u> D.C. Code § 25–201, Establishment of the Alcoholic Beverage Control Bd. (no mention of suability), <u>with</u> D.C. Code § 38–1202.01, Establishment of Bd. of Trustees and Univ. (noting that the Board has the power to "[s]ue and be sued"), <u>and</u> D.C. Code § 1–911.01, Civil Enf't ("The Retirement Board may sue and be sued under this chapter as an entity."). <u>See also</u> <u>Armstrong v. D.C. Pub. Library</u>, 154 F. Supp. 2d 67, 71 (D.D.C. 2001) (finding that "the Board of Library Trustees has not been granted the authority to sue or defend suits" because there was no explicit authorizing language in the statute). Plaintiffs contend that the Board <u>is</u> sui juris because it contested HRH's petition to the Court of Appeals for review of the Board's order—but judicial review of the Board's orders is specifically authorized by statute. <u>See</u> D.C.

Code § 2–510, DCAPA (naming the D.C. Court of Appeals as the proper court to review agency orders); id. § 25–826 (authorizing judicial review of the Board's orders pursuant to the DCAPA). The DCAPA permits judicial review of agency action generally, and it is clear that not all D.C. agencies or entities may independently sue and be sued. Thus, because plaintiffs concede that it is unclear that the ABC Board is suable, Pls.' Opp'n at 7 n.3, and because explicit statutory authorization is required and is lacking, the Court concludes that the Board may not be sued independently. Accordingly, the Court will treat claims against the Board as claims against the District of Columbia and dismiss the Board as a defendant.[11]

## 2. The District

Defendants next argue that plaintiffs have failed to sufficiently allege municipal liability that would enable them to hold the District liable. Mot. to Dismiss at 12. In order to establish municipal liability, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (quoting Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)), and show that the "policy or custom itself [was] 'the moving force behind the constitutional violation,'" Carter v. District of Columbia, 795 F.2d 116, 122 (D.C. Cir. 1986) (quoting Monell, 436 U.S. at 694). "A municipality can establish a policy or custom in several ways," including "by acting through a municipal policymaker." BEG Invs., 144 F. Supp. 3d at 24 (citing Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003)). The relevant question here, then, is whether the Board's order imposing the license conditions and its subsequent show cause orders constitute actions taken by a municipal policy maker. If so, the District can be held liable for the Board's actions.

---

[11] Because defensive issue preclusion applies even in subsequent suits brought against different parties, this does not affect the standing analysis for HRH. See United States v. Mendoza, 464 U.S. 154, 158 (1984); Walker, 123 A.3d at 164.

Courts look to state law—or in this case District of Columbia law—to determine whether an individual or agency is an authorized policy maker. McMillian v. Monroe Cty., 520 U.S. 781, 786 (1997). Where a challenged decision or action is "properly made by that government's authorized decision makers, it surely represents an act of official government 'policy' as that term is commonly understood." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). The Board is a municipal agency "tasked with approving, changing, suspending, and revoking liquor licenses for establishments serving alcoholic beverages in the District," BEG Invs., LLC v. Alberti, 85 F. Supp. 3d 13, 19 (D.D.C. 2015). It appears from D.C. law that the Board has final authority to issue orders imposing conditions on liquor licenses, to issue show cause orders on violations, and to hold hearings on these violations, including license revocation hearings. See D.C. Code §§ 25–104, 447. There is no indication that the Board's exercise of these powers is conditioned on approval by other government officials or agencies, meaning that the actions plaintiffs challenge are the actions of D.C.'s authorized decision maker with respect to liquor licensing. Indeed, at least one other court in this district has found, based on the Board's powers under D.C. law, that the Board is a municipal policy maker whose orders can give rise to municipal liability under Monell. See BEG Invs., 144 F. Supp. 3d at 26–27. This Court is likewise satisfied that D.C. may properly be named as a defendant. To sufficiently allege municipal liability here, plaintiffs need only allege enough facts to show that it is plausible that the Board's orders violated their constitutional rights, a question to which the Court will now turn.

### D. FAILURE TO STATE A CLAIM

1. Count I: Speech, Association, and Retaliation Claims

Plaintiffs claim that the conditions imposed on the license violate Scahill's First Amendment rights by prohibiting him from entering into a business relationship with HRH, and

that defendants also violated their rights to petition the courts by retaliating against plaintiffs after

they petitioned for review of the Board's order and filed this lawsuit. See Am. Compl. ¶¶ 24–26.[12]

### a. Association

"[Supreme Court] decisions have referred to constitutionally protected 'freedom of

association' in two distinct senses[,] . . . freedom of intimate association and [] freedom of

expressive association." Roberts v. U.S. Jaycees, 468 U.S. 609, 617–18 (1984). Intimate

association protects one's ability to "enter into and maintain certain intimate human relationships,"

particularly those associated with family, such as "marriage, childbirth, the raising and education

of children, and cohabitation with one's relatives." Id. at 617, 619 (internal citations omitted).

Freedom of expressive association, on the other hand, protects the right to "associate for the

purpose of engaging in those activities protected by the First Amendment—speech, assembly,

petition for the redress of grievances, and the exercise of religion." Id. at 618. Neither protection

recognizes "a generalized right of 'social association.'" City of Dallas v. Stanglin, 490 U.S. 19,

25 (1989).

Plaintiffs do not allege that the Board's order infringes on Scahill's ability to "enter into

and maintain [protected] intimate human relationships," Jaycees, 468 U.S. at 617, nor have they

alleged that he is engaged in or wishes to engage in any kind of expressive speech, see, e.g., Boy

Scouts of Am. v. Dale, 530 U.S. 640, 648 (2000) ("[T]o come within [the] ambit [of expressive

association], a group must engage in some form of expression."). Rather, plaintiffs specifically

allege that Scahill's association rights have been violated because the Board's order prohibits him

---

[12] In their opposition, plaintiffs also claim that the Board's order violates HRH's speech rights by compelling HRH to notify the police any time Scahill violates the terms of the barring notice. See Pls. Opp'n at 10–11. But the Court has already determined that HRH does not have standing to challenge the Board's order. Regardless, plaintiffs do not allege this violation in their complaint or identify particular speech upon which defendants have infringed. Am. Compl. ¶¶ 24, 26. While plaintiffs' complaint must be liberally construed, plaintiffs may not amend their complaint in their briefs. See Kingman Park Civic Ass'n v. Gray, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014); Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

from "entering into any type of <u>business</u> relationship" with HRH. Am. Compl. ¶ 24 (emphasis added). But business relationships are generally not protected by the First Amendment, as such relationships are "remote from the concerns giving rise to" the constitutional protections for intimate and expressive association. <u>Jaycees</u>, 468 U.S. at 620. Indeed, plaintiffs concede that "there is only minimal constitutional protection of the freedom [of] commercial association." Pls.' Opp'n at 15 (quoting <u>Jaycees</u>, 468 U.S. at 634).

But plaintiffs appear to argue that an exception should be made in Scahill's case because courts have recognized the right of individuals and organizations to commercially associate with a particular attorney. <u>See</u> Pls.' Opp'n at 15–16 (citing <u>Denius v. Dunlap</u>, 209 F.3d 944, 953 (7th Cir. 2000); <u>VanCamp v. McNesby</u>, No. 3:08-cv-166-RS-MD, 2008 U.S. Dist. LEXIS 121576, at *6 (N.D. Fla. June 20, 2008)). But courts have recognized the right to associate with counsel because this furthers other constitutional rights, including the First Amendment rights to speech, assembly, and petition. <u>See</u> <u>Martin v. Lauer</u>, 686 F.2d 24, 32 (D.C. Cir. 1982); <u>see also</u> <u>Denius</u>, 209 F.3d at 953–54 (citing cases). Plaintiffs have failed to explain how this exception helps Scahill, as they do not allege that Scahill wishes to associate with HRH for purposes of consulting counsel, or to engage in speech, assembly, or petition.[13] The other two cases plaintiffs cite are likewise unavailing, because in each the plaintiffs were specifically engaged in expressive conduct; these cases have nothing to do with commercial association rights. <u>See</u> <u>Citizens United v. FEC</u>, 558 U.S. 310, 343 (2010); <u>NAACP v. Alabama ex rel. Patterson</u>, 357 U.S. 449, 466 (1958).

Because plaintiffs have not alleged an intimate or expressive association affected by the Board's order, and have not cited a single case that suggests the business relationship they have

---

[13] Sitting at the bar and speaking with the bartender about one's troubles does not count.

alleged is a protected association, the Court finds that plaintiffs have failed to state a claim for violation of Scahill's First Amendment associational rights. Hence, that claim will be dismissed.

### b. Retaliation

"To establish a claim for retaliation under the First Amendment, an individual must prove (1) that he engaged in protected conduct, (2) that the government took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) that there exists a causal link between the exercise of a constitutional right and the adverse action." Doe v. District of Columbia, 796 F.3d 96, 106 (D.C. Cir. 2015) (internal quotation marks omitted). "To satisfy the causation link, a plaintiff must allege that his or her constitutional speech was the 'but for' cause of the defendants' retaliatory action." Id. at 107.

Plaintiffs allege that defendants retaliated against them on two separate occasions for exercising their right to petition the courts. First, plaintiffs claim that the Board issued a Notice of Status and Show Cause Hearing to HRH on October 6, 2016. It is unclear whether plaintiffs allege that the Board issued the first notice in response to HRH's motion for reconsideration, filed on May 31, 2016, or in response to Scahill's petition for review filed with the D.C. Court of Appeals on July 27, 2016. See Am. Compl. ¶¶ 14–17; see also Pls.' Opp'n at 13 (seeming to suggest that plaintiffs only allege retaliation in response to Scahill's petition for review). The Board issued another notice to HRH on November 7, 2016, allegedly in response to plaintiffs filing this present lawsuit on October 18, 2016. Am. Compl. ¶¶ 16–19. Although the notices state that they were issued because Scahill was previously seen on the Alibi's property on June 10, 2016 and July 8, 2016, in direct violation of the license conditions, plaintiffs allege that the notices were actually retaliatory. Id.

In moving for reconsideration of the Board's order, filing a petition for review, and then filing this suit, plaintiffs have clearly engaged in "protected conduct." Doe, 796 F.3d at 106; see also Borough of Duryea v. Guarnieri, 564 U.S. 379, 382 (2011) (noting that "[a]mong other rights essential to freedom, the First Amendment protects 'the right of the people . . . to petition the Government for a redress of grievances'" (quoting U.S. Const. amend. I)). However, the alleged retaliatory actions—the issuance of the notices—were only taken against HRH, the license holder, not against Scahill, a fact which plaintiffs fail to acknowledge in either the complaint or their brief. Plaintiffs have not alleged that the Board took any retaliatory action against Scahill, and plaintiffs have consistently maintained that Scahill is not an owner of HRH or the Alibi. See, e.g., Am. Compl. ¶ 12. Without more, plaintiffs have failed to plausibly allege a retaliation claim with respect to Scahill. The Court will therefore consider only HRH's retaliation claim; Scahill's retaliation claim will be dismissed.

Defendants argue that HRH has not alleged that its First Amendment activity was actually chilled by the alleged retaliation, and that this therefore defeats HRH's claim. Indeed, as defendants point out, the fact that HRH has continued this suit indicates that HRH has not been deterred from the exercise of its rights. Mot. to Dismiss at 17–18. At least one court in this district has dismissed a complaint where the plaintiff failed to allege that the alleged retaliatory conduct actually deterred him from exercising his First Amendment rights. See Hatfill v. Ashcroft, 404 F. Supp. 2d 104, 118–19 (D.D.C. 2005). But while "a plaintiff's actual response to a defendant's conduct . . . 'provides some evidence of the tendency of that conduct to chill First Amendment activity,'" the plaintiff's response is not dispositive of this element. See Hartley v. Wilfert, 918 F. Supp. 2d 45, 54 (D.D.C. 2013) (citation omitted). The standard, as articulated by the D.C. Circuit, is whether the retaliatory action is "sufficient to deter a person of ordinary firmness in plaintiff's

position from speaking again," not whether the plaintiff was actually deterred. See Doe, 796 F.3d at 106 (citation omitted). Here, it is certainly plausible—indeed it seems likely—that issuing an order to show cause threatening to revoke a business's liquor license would cause a person (or business) of ordinary firmness to drop the suit against the Board, even if plaintiff did not do so in this case. Thus, the fact that HRH was not actually deterred from pursuing this suit is not fatal to its claim.

With respect to causation, at the motion to dismiss stage the "temporal proximity of the protected behavior and the alleged retaliation can suggest that there was a causal relationship between the two." Saint-Jean v. District of Columbia, 846 F. Supp. 2d 247, 259 (D.D.C. 2012) (citation and internal quotation marks omitted); see Singletary v. District of Columbia, 351 F.3d 519, 525 (D.C. Cir. 2003). There is no hard and fast rule as to how close in time the protected action and the alleged retaliation must be, but when plaintiffs rely on temporal proximity alone to establish causation, the alleged retaliation must take place "very close" in time to the protected conduct. Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007).

To the extent that plaintiffs argue that the Board took retaliatory action against HRH in October 2016 for HRH's May 2016 motion for reconsideration, these events, standing alone, are too distant in time to raise a plausible inference of retaliation. See, e.g., Taylor v. Solis, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (finding two-and-a-half month interval insufficient to support inference of retaliation based on temporal proximity alone). However, plaintiffs also allege that defendants issued the first notice two-and-a-half months after Scahill's petition for review was filed, but four months after Scahill was allegedly seen at the Alibi. Am. Compl. ¶¶ 16–17; Pls.' Opp'n at 13. Hence, HRH is claiming that it was retaliated against for Scahill's protected conduct, i.e., Scahill's filing of a petition for review. HRH must therefore allege facts that make it plausible

that the Board was retaliating for Scahill's conduct, rather than because it had cause to believe that HRH violated the terms of the license conditions. But plaintiffs do not address this in their complaint, and neither party addresses this issue in their briefs. In addition to this disconnect, the alleged retaliatory action against HRH in response to Scahill's conduct took place two and a half months later, at the outer limits of the time period based on which courts will typically find plausible retaliation due to temporal proximity alone. See, e.g., BEG Invs., 144 F. Supp. 3d at 22–23 (noting that a period of one month or less "typically suffices" to raise a plausible inference of retaliation) (citing cases).

Plaintiffs argue that the Board is only authorized to bring charges within 30 days of the occurrence of a violation, and that the fact that the violation occurred four months before issuance of the notice is evidence that the Board's motives were illegitimate. See Am. Compl. ¶ 26; Pls.' Opp'n at 14. Were this an accurate statement of the law, plaintiffs might have a point.[14] But the D.C. Code states that a notice shall issue "[w]ithin 30 days of receiving evidence supporting a reasonable belief that any licensee . . . is in violation of the provision of this title or the regulations issued under it." D.C. Code § 25–447(c) (emphasis added). Plaintiffs have not made any allegations about when the Board learned (or when they think the Board learned) of the alleged violations; their argument about when the Board is required to take action thus lends no support to their claims. Plaintiffs must provide enough "by way of factual content to 'nudge' [a] claim of [retaliation] 'across the line from conceivable to plausible.'" Iqbal, 556 U.S. at 683 (quoting Twombly, 550 U.S. at 570). However, all that plaintiffs are left with here in support of their claims is the allegation that the Board took action against HRH because of something someone else did

_____

[14] Or would they? Would a person of ordinary firmness be deterred from pursuing a lawsuit because the Board then seeks to investigate her for an alleged violation that the Board is legally prohibited from considering? When any punishment would thus certainly be reversed upon petition to the D.C. Court of Appeals? It seems unlikely.

two and a half months previously. While it may be conceivable that the Board issued the first notice against HRH in retaliation, based on the bare facts plaintiffs have alleged, it is not plausible. HRH has therefore failed to state a retaliation claim based on the Board's first notice.

The second notice, meanwhile, was issued against HRH less than a month after Scahill filed this suit. Am. Compl. ¶¶ 18–19. Courts in this Circuit have held that "[c]ausation 'may be inferred—especially at the pleading stage—when the retaliatory act follows close on the heels of the protected activity.'" BEG Invs., 144 F. Supp. 3d at 22 (emphasis added) (quoting Smith v. De Novo Legal, LLC, 905 F. Supp. 2d 99, 104 (D.D.C. 2012)). Normally, the relatively close proximity between the protected conduct and the issuance of the second notice would alone raise "a plausible inference of retaliation." Id. at 22–23 (citing cases finding proximity of one month sufficient). And certainly, "[t]aken as true, these allegations are consistent with" plaintiffs' retaliation claim. Iqbal, 556 U.S. at 681 (emphasis added). "But given more likely explanations, they do not plausibly establish this purpose." Id.

Prior to sending out its second notice, the Board had imposed conditions on HRH's liquor license and had already issued one notice based on a supposed sighting of Scahill at the Alibi—a notice that, as discussed above, cannot plausibly be deemed retaliatory. And, as defendants point out, "[p]laintiffs do not deny [in their complaint] that Scahill was present at [t]he Alibi on the dates identified by the Board." Mot. to Dismiss at 18. On the facts as plaintiffs present them, it remains quite likely that in issuing the second notice the Board was acting lawfully, justified by the desire to enforce its order when tipped off for the second time that HRH might be in violation of it. "As between that 'obvious alternative explanation' for the" second notice "and the purposeful, invidious" retaliation plaintiffs ask the Court "to infer, [retaliation] is not a plausible conclusion." Iqbal, 556 U.S. at 682 (citation omitted). The same goes for plaintiffs' claim of retaliation through

"continued harassment by investigators with the D.C. Alcoholic Beverage Regulation Administration"—a claim which, at any rate, cannot be evaluated because plaintiffs provided no timeframe for the alleged harassment. Am. Compl. ¶ 26. HRH's retaliation claim will therefore be dismissed.[15]

### 2. Count II: Freedom of Movement and Liberty

#### a. Freedom of Movement

Plaintiffs allege in Count II that the license conditions infringe on Scahill's Fifth Amendment due process right to travel and move freely in the District of Columbia by barring him from the Alibi. Am. Compl. ¶ 31. The Supreme Court has "specifically declined to decide whether the right to interstate travel . . . has its analogue in intrastate travel." Hutchins v. District of Columbia, 188 F.3d 531, 537 (D.C. Cir. 1999). The D.C. Circuit, likewise, has not definitely concluded that such a right exists, although it appears to have assumed that such a right could exist in the abstract. Id. at 537–40. To the extent that courts have recognized such a right, however, the right has been construed to protect an individual's right to move about on public streets or to move between places, not a right to be in a particular place or to access a particular place at any given time. See, e.g., Hannemann v. S. Door Cty. Sch. Dist., 673 F.3d 746, 756 (7th Cir. 2012) (ban prohibiting student from being on school grounds did not implicate right to intrastate travel because student did not allege that the ban inhibited the student's ability to move from place to place within the county or to access substantial portions of the county); Williams v. Town of

---

[15] Even if HRH could plausibly allege causation through proximity here, they have another problem: as with the first notice, there is a misalignment between the plaintiff who engaged in the protected action and the plaintiff against whom the Board allegedly retaliated. The Board's notices, and therefore the alleged retaliation, were aimed at HRH as the holder of the liquor license. But, at the time the Board sent the second notice, Scahill was the only plaintiff involved in this suit. He did not amend his complaint to include HRH until December 28, 2016, well after the Board sent the second notice. Compare Compl. at 1, with Am. Compl. at 1. Under plaintiffs' own asserted facts, then, the Board was retaliating against HRH for protected activity that Scahill had taken. Because HRH did not actually engage in protected conduct, it cannot plausibly plead the protected conduct prong of its retaliation claim.

Greenburgh, 535 F.3d 71, 75 (2d Cir. 2008) ("[I]t is clear that the right [to intrastate travel] protects movement between places and has no bearing on access to a particular place." (emphasis in original)); Johnson v. City of Cincinnati, 310 F.3d 484, 498 (6th Cir. 2002) ("[W]e find that the right to travel locally through public spaces and roadways enjoys a unique and protected place in our national heritage."); Lutz v. City of York, 899 F.2d 255, 268 (3d Cir. 1990) ("The right or tradition we consider may be described as the right to travel locally through public spaces and roadways.").

Here, Scahill essentially claims that the Board's order infringes on his ability to be at the Alibi, but this claim does not implicate the right to intrastate travel, assuming that right exists. Plaintiffs do not allege that the Board's order inhibits Scahill's ability to move generally around D.C. or to move about on the public streets, or that the order prohibits him from accessing other parts of the District. Nor has Scahill alleged that the barring notice prohibits him from socializing with friends and family, or entering into meaningful employment at establishments other than the Alibi. See Hannemann, 673 F.3d at 756. In short, Scahill has failed to allege any infringement of this right, and the freedom of movement claim will therefore be dismissed.

b. Liberty

Plaintiffs next allege that the conditions imposed on the license infringe on their Fifth Amendment "right to liberty." Am. Compl. ¶ 32.[16] Plaintiffs are no more specific than this, but because plaintiffs separately raise procedural due process claims in Count III, the Court will construe this claim as raising a substantive due process claim that the conditions infringe on some fundamental liberty right. See Am. Compl. ¶¶ 38–46 (procedural due process claim). The "substantive component" of the Fifth Amendment's Due Process Clause "bars certain, arbitrary,

---

[16] Because HRH has no standing to assert this claim, the allegation is technically limited to an infringement on Scahill's liberty interests. However, the claim fails in any case, for the reasons laid out below.

wrongful government actions regardless of the fairness of the procedures used to implement them." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (internal quotation marks omitted). The difference between a substantive due process challenge and a procedural due process challenge is significant: an individual's liberty may be curtailed, for example, when one is put in prison, but this is constitutionally permissible if the individual has been afforded procedural due process. Government infringement of a substantive fundamental right, however, is analyzed under strict scrutiny, and is therefore rarely upheld. See Hutchins, 188 F.3d at 536 (explaining this difference). Courts are thus reluctant to create new fundamental rights, and typically analyze claimed rights at a fairly specific level of generality. Id. at 538; see also Reno v. Flores, 507 U.S. 292, 302 (1993) ("Substantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." (internal quotation marks omitted)). Plaintiffs must therefore allege that they have been deprived of a specific liberty interest that is constitutionally cognizable. See, e.g., Doe v. District of Columbia, 206 F. Supp. 3d 583, 604 (D.D.C. 2016).

Here, plaintiffs have failed to identify, either in the complaint or in their brief, any specific fundamental liberty interest—beyond the right to intrastate travel, analyzed above—that they claim is implicated by the license conditions. Indeed, plaintiffs do not raise any arguments on this claim in their opposition to defendant's motion to dismiss, and the Court will not argue plaintiffs' case for them. Without some indication from plaintiffs which liberty interests they are relying on, the Court cannot accept their claim. This claim will therefore be dismissed. See, e.g., Webb v. Smith, No. CIV-15-213-DLR, 2016 WL 7666119, at *3 (D. Utah Jan. 22, 2016) (dismissing substantive due process claim for failure to identify a specific liberty interest at issue).

      3.   Count III: Procedural Due Process Claim

This claim is alleged by Scahill only. Scahill argues that defendants deprived him of both liberty and property interests without affording him appropriate procedural protections required by the Due Process Clause. Am. Compl. ¶¶ 40–41. Defendants do not appear to dispute that Scahill was not at the Board hearing and that he was not formally summoned to appear at the hearing; Scahill claims that this deprived him of his right to a pre-deprivation notice and hearing. See Am. Compl. ¶ 43; see also Mot. to Dismiss at 24–25.

Unfortunately for Scahill, this claim, too, is a stretch. To state a claim for denial of procedural due process, Scahill must allege that the government deprived him of a "liberty or property interest to which [he] had a legitimate claim of entitlement, and that the procedures attendant upon that deprivation were constitutionally insufficient." Roberts v. United States, 741 F.3d 152, 161 (D.C. Cir. 2014) (alteration and internal quotation marks omitted). The liberty interests Scahill alleges he was deprived of are "his constitutional rights to free[] speech, free[] association, freedom to travel, and liberty." See Am. Compl. ¶ 40. In the opposition brief, however, Scahill only argues that the Board's order infringes on his liberty interest in traveling freely in D.C., and in associating with HRH. See Pls.' Opp'n at 20. In other words, Scahill appears to be incorporating his First and Fifth Amendment claims into a procedural due process claim.

As the Court has already explained in addressing those claims, however, Scahill has not alleged sufficient facts to show a deprivation of these rights. The Board's order does not appear to act on Scahill's speech rights at all, and he has failed to show that any potential business relationship with HRH is protected by the First Amendment. Likewise, he has not shown that the Board's order infringes on his right to intrastate travel, and to the extent that he claims that the Board has infringed on some other liberty interest, he has not identified that interest here. He

therefore cannot bring a procedural due process claim on the basis that he was deprived of these rights without proper notice and a hearing.

The property interest that Scahill asserts is based on his role as guarantor on the Alibi's lease, which he claims exposes him to "hundreds of thousands of dollars of liability." Id. ¶ 41. In imposing conditions on the license requiring HRH to bar him from the property, Scahill alleges that the Board deprived him of "his right to protect this liability." Id. Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "As the Supreme Court has repeatedly stated, 'the range of interests protected by procedural due process is not infinite.'" Gen. Elec. Co. v. Jackson, 610 F.3d 110, 119 (D.C. Cir. 2010) (quoting Roth, 408 U.S. at 570)). "[I]t is not enough that one has 'an abstract need or desire' for the asserted property"; rather, to assert a due process claim, one must "'have a legitimate claim for entitlement to it.'" Id. (quoting Roth, 408 U.S. at 577).

While Scahill has alleged a potential personal liability stemming from the Alibi, he has not identified any source, either in state law or under the terms of the lease agreement, that gives him a property interest in HRH or the Alibi on which the Board's order may have infringed. Plaintiffs have made clear that Scahill is not an owner of the Alibi, nor does he have an ownership interest in HRH or the license. Am. Compl. ¶ 12. His claim is essentially that in barring him from the Alibi, the Board is preventing him from overseeing the business or property in a way that would keep him from being exposed to liability. But Scahill cites no case suggesting that this is sufficient to create a property interest. Cf. Odal Typographers, Inc. v. City of New York, 560 F. Supp. 558, 560 (S.D.N.Y. 1983) (guarantors of corporate debt did not have a property interest in corporation's

continued ability to pay its debt that would support a § 1983 claim).  Indeed, plaintiffs' opposition brief does not even address defendants' argument that Scahill failed to allege a property interest. See Mot. to Dismiss at 24; Pls.' Opp'n at 18–21.

The complaint does not allege, for example, that Scahill's role as guarantor gives him the right to have any role in the running of the business or the management of the property in the first place.  The Alibi's owners could—and according to the Board's order, did—themselves bar him from the restaurant.  Scahill therefore appears only to have a general interest—"an abstract need or desire"—in the responsible management of the restaurant, or in being permitted to oversee the management of the restaurant.  However, many could claim such an interest without giving rise to a property interest in the business protected under the Due Process Clause.  Employees, for example, could lose money and would certainly be harmed if HRH's liquor license were revoked or the restaurant closed.  Nonetheless, Scahill has not sufficiently alleged that he has a property interest that is grounded in state law and therefore protected by the Due Process Clause. Accordingly, this claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the District's motion to dismiss will be granted.  While plaintiffs alleged enough facts to support Scahill's standing at this stage, HRH's claim of standing is precluded by the D.C. Court of Appeals' prior order.  This eliminates plaintiffs' unconstitutional conditions claim, which only applied to HRH.  Plaintiffs have also failed to allege sufficient facts to support the rest of their claims.  Accordingly, the District's motion will be granted, and plaintiffs' complaint will be dismissed.[17]  A separate order will issue on this date.

---

[17] Defendant's motion to dismiss plaintiffs' original complaint [ECF No. 8] will be denied as moot.

_____
/s/
JOHN D. BATES
United States District Judge

Dated:  September 25, 2017