UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARTIN SCAHILL, et al.,

    Plaintiffs,

    v.

DISTRICT OF COLUMBIA, et al.,

    Defendants.

Civil Action No. 16-2076 (JDB)

**MEMORANDUM OPINION**

Currently before the Court is [16] plaintiffs' motion for reconsideration and for leave to amend their complaint. For the following reasons, the motion will be denied.

## I. BACKGROUND

The Court will assume familiarity with the facts of this case, as laid out in the prior Memorandum Opinion granting defendants' motion to dismiss ("Mem. Op.") [ECF No. 14]. See Scahill v. District of Columbia, —F. Supp. 3d—, 2017 WL 4280946 (D.D.C. Sept. 25, 2017). Plaintiffs Martin Scahill ("Scahill") and HRH Services, Inc. ("HRH") brought claims under 42 U.S.C. § 1983 against the District of Columbia Alcoholic Beverage Control Board ("the Board"), the District of Columbia itself, and ten unnamed "John Doe" defendants. Plaintiffs alleged that conditions placed on HRH's liquor license—which barred Scahill from entering HRH's pub, the Alibi—violated their First Amendment rights to freedom of speech and freedom of association, and that the Board brought enforcement actions against HRH in retaliation for plaintiffs' lawsuits against the Board. Plaintiffs also claimed that the order violated their Fifth Amendment rights to liberty, due process, and freedom of movement and violated the unconstitutional conditions doctrine. Plaintiffs sought a declaratory judgment, injunctive relief, and damages.

1

Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that plaintiffs lacked standing and failed to state a claim. The Court granted the motion, finding that a prior D.C. Court of Appeals decision precluded HRH from claiming it had standing on its claims related to the Board's order and that plaintiffs did not state plausible claims to relief. Mem. Op. at 33; see Order ("September 25 Order") [ECF No. 13]. The Court also issued an order to show cause as to why the claims against the John Doe defendants should not be dismissed for failure to identify and serve them with process under Federal Rule of Civil Procedure 4(m). See Order [ECF No. 15]. Plaintiffs then voluntarily dismissed their claims against the John Doe defendants. See Response to Order to Show Cause [ECF No. 17]. However, HRH also filed a motion to: (1) reconsider the Court's decision regarding HRH's standing, thereby seeking to revive HRH's First and Fifth Amendment and unconstitutional conditions claims; and (2) amend plaintiffs' complaint to provide more detailed facts, in order to revive their retaliation claims. See Pl. HRH's Mot. for Reconsideration and for Leave to Amend the Compl. ("HRH Mot.") [ECF No. 16]. The District opposes the motion. See Defs.' Opp. to Pl. HRH Servs. LLC's Mot. for Reconsideration and to Amend the Compl. ("Opp'n") [ECF No. 21].

## II. DISCUSSION

HRH argues that the Court should reconsider its determination that a prior D.C. Court of Appeals decision precluded later courts from finding that HRH has standing. HRH asserts that it was fined by the Board after briefing closed on the motion to dismiss, and that this factual change triggers the curable defect exception to issue preclusion. HRH Mot. at 3–5. HRH also claims that issue preclusion should not have applied in the first place, because standing under the D.C. Administrative Procedure Act (DCAPA) is not the same issue as Article III standing. Id. at 5–6.

Additionally, HRH seeks leave to amend its complaint, so it can add more details about the Board's alleged retaliatory acts. Id. at 6–7. The Court will consider each argument in turn.

### A. STANDARD OF REVIEW

Before the Court can reach the merits of HRH's reconsideration motion, it must first resolve a dispute over the applicable standard of review. HRH argues that its motion is properly brought under Federal Rule of Civil Procedure 54(b) because the September 25 Order was not a final order. HRH Mot. at 2 n.2; Reply Br. in Supp. of Pl. HRH's Mot. for Reconsideration and for Leave to Amend the Compl. ("Reply") [ECF No. 23] at 1, 5–6. Under this Rule, a court may revise its decisions "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The District, on the other hand, claims that plaintiffs' voluntary dismissal of the John Does eliminated the final claims in the case, thus transforming the September 25 Order into a final order that may be reconsidered only under Rule 59(e). See Opp'n at 4–5. That Rule allows a party to move to "alter or amend a judgment" already entered. Fed. R. Civ. P. 59(e). The Court must therefore determine whether plaintiffs' voluntary dismissal of the John Doe plaintiffs transformed the September 25 Order into a final one.

"A decision is final only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Cincinnati Ins. Co. v. All Plumbing, Inc., 812 F.3d 153, 156 (D.C. Cir. 2016) (citation omitted). Therefore, a court must resolve all claims against all defendants before an order may be deemed final. This is a procedure that the parties themselves can only rarely control. "The judge, not the parties, is meant to be the dispatcher who controls the circumstances and timing of the entry of final judgment." Blue v. D.C. Pub. Sch., 764 F.3d 11, 18 (D.C. Cir. 2014). Thus, a court can render a prior order final by involuntarily dismissing remaining claims or parties, even without prejudice. Id. However, the D.C. Circuit "treats voluntary but non-

3

prejudicial dismissals of remaining claims [by plaintiffs themselves] as generally insufficient to render final and appealable a prior order disposing of only part of the case." Id. at 17. Here, plaintiffs dismissed their claims against the John Doe defendants on their own initiative, and did not indicate that they were doing so with prejudice. Response to Order to Show Cause at 1; see Fed. R. Civ. P. 41(a)(1)(B) ("Unless the notice or stipulation [of dismissal] states otherwise, the dismissal is without prejudice."). Hence, the September 25 Order cannot be retroactively declared final based on their voluntary dismissal.

Moreover, the Court granted defendants' motion to dismiss plaintiffs' amended complaint as against the Board and the District. See September 25 Order. The September 25 Order did not dismiss the action in its entirety. Nor did the Court dismiss the complaint with prejudice. "In evaluating the finality of district court rulings on motions to dismiss, [the D.C. Circuit has] distinguished between orders dismissing the action, which are final, . . . and orders dismissing the complaint, which, if rendered 'without prejudice,' are 'typically' not final . . . ." Attias v. Carefirst, Inc., 865 F.3d 620, 623 (D.C. Cir. 2017) (citations omitted). As this Court neither dismissed the action nor was involved in dismissing the claims against the John Doe defendants, the Court's prior order was not final.

Thus, HRH is correct that its reconsideration motion must be treated as a Rule 54(b) motion, not a Rule 59(e) motion. Unlike Rule 59(e), which "sets a high threshold for parties to raise a new argument for the first time after judgment," Cobell v. Jewell, 802 F.3d 12, 25 (D.C. Cir. 2015), "Rule 54(b)'s approach . . . can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires,'" id. Justice may require reconsideration "where a court has 'patently misunderstood a party[,] . . . has made an error not of reasoning but of apprehension, or where a controlling or significant change

4

in the law or facts [has occurred] since the submission of the issue to the Court.'" Moore v. Carson, No. CV 14-2109 (JDB), 2017 WL 1750248, at *3 (D.D.C. May 3, 2017) (citation omitted) (second alteration in original). The decision whether to reconsider a prior order is left to the Court's discretion, and the Court need not consider arguments that have already been rejected on the merits. Id. (citing Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc., 630 F.3d 217, 225, 227 (D.C. Cir. 2011)).

### B. RECONSIDERATION OF ISSUE PRECLUSION

HRH has moved for reconsideration on only one issue: the preclusive effect of the D.C. Court of Appeals' prior decision on HRH's standing to challenge the Board's order. Particularly because the parties did not have the opportunity to brief this issue prior to the September 25 Order, the Court takes seriously its obligation to reexamine the preclusion holding. Ultimately, however, HRH's two attacks on that holding are unconvincing.

1. The Curable Defect Exception

HRH first argues that the Board's decision on July 20, 2017 to fine HRH $4,000 for violating the terms of its liquor license, and HRH's payment of that fine, cured any jurisdictional defect identified by the D.C. Court of Appeals. HRH Mot. at 4–5. HRH thereby invokes the curable defect exception to issue preclusion, which "allows relitigation of jurisdictional dismissals when a precondition requisite to the court's proceeding with the original suit was not alleged or proven, and is supplied in the second suit." Nat'l Ass'n of Home Builders v. EPA, 786 F.3d 34, 41 (D.C. Cir. 2015) (citation and internal quotation marks omitted). To break the shield of issue preclusion under this exception, a plaintiff must show that "a material change following dismissal cured the original jurisdictional deficiency." Id.

Here, the factual change—the Board's decision to fine HRH—"follow[ed] dismissal": it occurred in July 2017, about nine months after the D.C. Court of Appeals dismissed HRH's original appeal. The Board's decision was also a material change, although the District seeks to claim otherwise. See Opp'n at 8–10. To work a material change, "[t]he new fact or occurrence must be separate and distinct from the past transaction that formed the basis for the original cause of action." Newdow v. Bush, 355 F. Supp. 2d 265, 275 (D.D.C. 2005). The District claims that the fine was simply a result of the Board's order, so the fine cannot be an injury if—as the D.C. Court of Appeals found—the order itself was not. Opp'n at 9. This is not quite true. The fine was indeed a result of the Board's order, but that does not mean that it did not create a new injury. The D.C. Court of Appeals found that HRH had not been injured by the order, which it characterized as granting HRH a liquor license on condition that it "enforce the barring notice it had issued against Martin Scahill, a person not affiliated with the business according to [HRH's] own statements below." HRH Servs., LLC v. D.C. Alcoholic Beverage Control Bd., No. 16–AA–758 (D.C. Oct. 13, 2016) (Ex. C, Mot. to Dismiss [ECF 10–3]). In other words, the court appeared to believe that it did HRH no harm to codify its own barring notice, when the person barred was no more critical to HRH's business than was any other person. When the Board fined HRH, on the other hand, it caused HRH direct economic harm. The fine thus "cause[d] a different type of injury" than did the order itself. Newdow, 355 F. Supp. 2d at 275.[1]

However, the fine does not ultimately trigger the curable defect exception, because it was imposed too late to make a difference. The standing inquiry is "focused on whether the party

---

[1] The District also argues that the evidence of the fine was not "new" evidence that could justify reconsideration, because HRH knew about the fine two months before issuance of the September 25 Order. Opp'n at 7–8. Plaintiffs did have notice from the briefing on the motion to dismiss that standing was at issue, and defendants attached to their dismissal motion the D.C. Court of Appeals decision that created the possibility of preclusion. However, given the flexibility of the Rule 54(b) analysis, and the fact that the Court brought up the question of issue preclusion sua sponte, plaintiffs' failure to alert the Court to the fine earlier will not be held against them.

6

invoking jurisdiction had the requisite stake in the outcome <u>when the suit was filed</u>." <u>Davis v. FEC</u>, 554 U.S. 724, 734 (2008) (emphasis added). Plaintiffs filed this suit in October 2016, nine months before the Board fined HRH. <u>See</u> Compl. [ECF No. 1]. Thus, HRH had no greater injury at the time at which standing must be assessed for this case than it did at the time the D.C. Court of Appeals determined that it had suffered no injury-in-fact. Indeed, the complaint in this suit was filed a mere five days after the D.C. Court of Appeals' standing decision. "The question for issue preclusion purposes is not whether that court was right or whether [HRH] actually does have standing, but rather whether [the proffered factual change] makes a difference for standing and thus comes within the curable defect exception." <u>Newdow</u>, 355 F. Supp. 2d at 276. The Board's fine of HRH did not injure HRH during the period of time when it would have made a difference. Hence, it could not cure the jurisdictional defect that the D.C. Court of Appeals found.

    2.  <u>The "Same Issue" Requirement</u>

For its second gambit, HRH claims that DCAPA standing and Article III standing do not constitute the "same issue," and that therefore the D.C. Court of Appeals' decision on the former does not preclude HRH from arguing the latter. HRH Mot. at 5–6. Because HRH's claim, in the main, relies on "arguments that [the Court] has already rejected on the merits," <u>Moore</u>, 2017 WL 1750248, at *3, less ink need be spilled in disposing of it. It is true that DCAPA standing incorporates the prudential standing doctrines the Supreme Court has developed for cases under the federal Administrative Procedure Act, so that DCAPA standing requires more than does Article III standing. <u>See</u> <u>Mallof v. D.C. Bd. of Elections & Ethics</u>, 1 A.3d 383, 394 & n.51 (D.C. 2010); <u>Dupont Circle Citizens Ass'n v. Barry</u>, 455 A.2d 417, 421 (D.C. 1983). However, the issue that the D.C. Court of Appeals decided, and the issue that was therefore precluded, was whether HRH

7

had suffered an injury-in-fact—a requirement that is identical under both standing doctrines. See Mem. Op. at 8.

HRH responds that the D.C. Court of Appeals' order did not state the grounds on which it determined that HRH lacked DCAPA standing. HRH Mot. at 6; Reply at 4. But the D.C. Court of Appeals' order cannot be interpreted as resting on anything other than the injury-in-fact requirement. As this Court has previously noted, the D.C. Court of Appeals described the Board's order as making HRH "enforce the barring notice it had issued against Martin Scahill," who was "not affiliated with the business." Mem. Op. at 7–8 (quoting HRH Servs., No. 16–AA–758). The court also cited a prior D.C. Court of Appeals decision as authority for dismissing the case, with a parenthetical quoting that decision's holding that "[a] party has not been . . . aggrieved by agency action unless [there is] some actual or threatened 'injury in fact' from the challenged agency action." HRH Servs., No. 16–AA–758 (quoting Dist. Intown Props., Ltd. v. D.C. Dep't of Consumer & Regulatory Affairs, 680 A.2d 1373, 1377 (D.C. 1996)); see Mem. Op. at 8. The court cited no authority regarding the other prongs of DCAPA standing. The only reasonable way to read the court's admittedly terse order is that it did not believe the conditions imposed on HRH's liquor license constituted an injury-in-fact. Because the injury-in-fact requirement is the same under Article III as it is under the DCAPA, there is no basis for reconsidering the Court's preclusion holding. HRH's motion for reconsideration will be denied.[2]

C. AMENDING THE COMPLAINT

---

[2] It should also be noted that the Court already considered most of plaintiffs' claims on the merits because it found that Scahill had standing. Mem. Op. at 17. HRH's alleged rights and injuries are nearly identical to Scahill's, and are thus very similar to those the Court already found wanting with respect to Scahill's speech, association, freedom of movement, and liberty claims. See id. at 20–23, 28–30; Second Am. Compl. ("SAC") [ECF. No. 16-6] ¶¶ 21, 23, 31. And, without reaching the merits of the unconstitutional conditions claim, the Court notes that the constitutional rights HRH alleges were given up as conditions for receiving a liquor license appear to be the same rights the Court has already adjudicated as to the other claims. Compare Mem. Op. at 20–23, 28–30, with SAC ¶ 47 ("The ABC Board has required HRH Services LLC to curtail its . . . rights to liberty, property, freedom of association, and freedom of speech to receive the government benefit of the Liquor License . . . .").

In addition to its request for reconsideration, HRH moves to amend plaintiffs' complaint to add more details in support of plaintiffs' First Amendment retaliation claims. Because plaintiffs have already used up their one automatic amendment, and because more than 21 days have elapsed since defendants filed their motion to dismiss, such an amendment requires leave of the Court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. However, amendment may be denied if the Court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Barkley v. U.S. Marshals Serv. ex rel. Hylton, 766 F.3d 25, 38 (D.C. Cir. 2014) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

The District argues that the Court should deny the motion to amend as moot, or else deny it as futile. Opp'n at 12–15. The first of these arguments is inapposite here, because the September 25 Order was not final. Unlike cases in which a final judgment has been entered, a Rule 15(a) motion does not become moot simply because reconsideration of the initial interlocutory opinion is unwarranted. See Ciralsky v. CIA, 355 F.3d 661, 673 (D.C. Cir. 2004). Nor is HRH's motion to amend "merely an attempt to evade the effect of the" September 25 Order. Opp'n at 13 (citing Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101, 134 (D.D.C. 2013)). Rather, it is a legitimate response to that order.

HRH runs into greater trouble, however, when confronted with the District's futility argument. "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." Williams v. Lew, 819 F.3d 466, 471 (D.C. Cir. 2016) (quoting James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C.Cir.1996)). Because

9

the First Amendment retaliation claims in the proposed amended complaint would still not survive a motion to dismiss, it would be futile to allow HRH to amend.

"To establish a claim for retaliation under the First Amendment, an individual must prove (1) that he engaged in protected conduct; (2) that the government took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) that there exists a causal link between the exercise of a constitutional right and the adverse action." Doe v. District of Columbia, 796 F.3d 96, 106 (D.C. Cir. 2015) (internal quotation marks omitted). "To satisfy the causation link, a plaintiff must allege that his or her constitutional speech was the 'but for' cause of the defendants' retaliatory action." Id. at 107 (citation omitted). As with plaintiffs' earlier complaint, the SAC founders on this causation prong, because HRH does not plausibly allege that its speech caused the Board's actions.

HRH provides the greatest amount of new detail for a claim that received only a sentence-worth of space in the First Amended Complaint: that the Board retaliated against HRH by sending inspectors to harass the staff at the Alibi. See SAC ¶¶ 53–56, 61, 63–64. This alleged harassment began less than two weeks after HRH filed its motion with the Board to reconsider the conditions placed on HRH's liquor license—it filed the motion on May 31, 2016 and investigators began visiting the Alibi on June 10. Id. ¶ 61. This temporal proximity could be enough on its own to plausibly allege causation. See BEG Invs., LLC v. Alberti, 144 F. Supp. 3d 16, 22 (D.D.C. 2015) ("[T]he D.C. Circuit 'has held that a close temporal relationship may alone establish the required causal connection,' . . . if 'the two events are "very close" in time . . . .'" (citations omitted)). The SAC also alleges that the Board fined the Alibi for allowing Scahill onto the premises even though one of the Board's investigators, Tasha Cullings, "testified under oath that she never identified Mr. Scahill as being present at the Alibi on June 10, 2016." SAC ¶ 63. According to the SAC, the

10

investigators' case report "falsely states" that Cullings "identified Mr. Scahill as being present." Id. Read in isolation, these facts would likely be enough to sustain HRH's retaliation claim as to the Board's inspections.

However, other information in the record renders HRH's retaliation claim too dubious to survive a motion to dismiss. Within the complaint itself, HRH alleges that the Board's main investigator, Mark Brashears, indicated a causal connection between HRH's First Amendment activity and his investigations when he "stated that Mr. Scahill 'did this to himself.'" Id. ¶ 64; see id. ¶ 56 ("On June 10, 2016, Investigator Brashears rationalized the heightened scrutiny and harassment by stating that Mr. Scahill 'did this to himself.'"). But this allegation actually undermines HRH's claim, because it shows that Brashears was, if anything, preoccupied by Scahill's past actions rather than by HRH's activity. Scahill was not the party who engaged in the protected conduct, nor is he alleged to be the one against whom the Board retaliated. Within the complaint itself, then, there is evidence that something other than HRH's motion for reconsideration was the but-for cause of the Board's inspections.

HRH's position becomes far more tenuous once one takes into account the evidence later presented at the Board's show cause hearing. The Court need not "accept as true the [amended] complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." Kaempe v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004). Here, in addition to the SAC itself, HRH attached to its motion to amend a copy of the Board's July 19, 2017 Findings of Fact, Conclusions of Law, and Order ("July 19 Board Order") (Exh. 1, HRH Mot. [ECF No. 16-4]). Moreover, a court may take "'judicial notice of facts on the public record,'" such as the facts evidenced at the Board's hearing that became part of the July 19 Board Order. Covad Commc'ns Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005) (citation omitted);

11

accord Earle v. District of Columbia, 707 F.3d 299, 308 n.10 (D.C. Cir. 2012); BEG Invs., LLC v. Alberti, 85 F. Supp. 3d 13, 20 n.4 (D.D.C. 2015). The July 19 Board Order, therefore, is properly before the Court even on a motion to dismiss. And the facts displayed in that order make it irrational to infer retaliation from the Board's investigations of the Alibi.

The July 19 Board Order contradicts or tempers many of the factual allegations made in the SAC. For instance, the order states that Cullings testified that she was "not familiar with Mr. Scahill and could not definitively identify Mr. Scahill . . . even with the photograph she was given." July 19 Board Order ¶ 14. But Cullings also testified that "she has no 'reasonable basis to doubt' [Brashears'] identification of Mr. Scahill." Id.[3] Combined with Brashears' own testimony that he saw Scahill speaking with the Alibi's owner, Rachel Traverso; that Scahill was working at the Alibi while Brashears was investigating; and that Traverso responded to Brashears' questioning about Scahill being there by saying to Scahill "you're not supposed to be here. If you don't leave, I'm going to call the police," the Board had sufficient evidence to find HRH in violation of its license conditions. Id. ¶¶ 13–16. That the Board charged HRH with violating its license conditions and fined HRH despite Cullings' equivocal statements is thus far more plausibly attributed to the totality of evidence available to the Board than to the retaliatory motive HRH ascribes to the Board. See HRH Mot. at 8; SAC ¶ 63. The Board order also contradicts the SAC's claim that Brashears came to the Alibi "to harass the staff and management." SAC ¶ 56. This claim clashes with testimony that Brashears visited the Alibi to investigate potential violations of its liquor license, and that any rudeness on Brashears' part was a side-effect of his attempts to prevent Alibi staff from stonewalling his investigative efforts. July 19 Board Order ¶¶ 12, 15–17, 19, 22–23. Giving

---

[3] HRH alleges that "the case report falsely states that . . . Cullings identified Mr. Scahill as being present." SAC ¶ 63. Assuming the allegation to be true, it is a troubling reflection on police tactics. However, it is not immediately probative of retaliatory intent. Additionally, the July 19 Board Order provides a more nuanced picture of Cullings' statements, making the case report appear less like an outright lie than an unfortunate embellishment.

proper weight to HRH's contradicted factual allegations, there is little beyond temporal proximity to suggest that HRH's reconsideration motion was the but-for cause of the Board's investigations.

Most importantly, the Board order shows that Brashears began investigating the Alibi on June 10, 2016 not because HRH had filed its reconsideration motion, but rather because he "became aware that [the Alcoholic Beverage Regulation Administration] had received a complaint that Martin Scahill was at [the] Alibi." July 19 Board Order ¶ 12. Similarly, Brashears testified that his July inspections were spurred by another complaint to the agency that Scahill was at the Alibi. Id. ¶ 19. Rachel Traverso was present at the show cause hearing and able to testify, and HRH's attorneys were free to put forward an alternative rationale. Id. ¶ 48. Yet there is no indication that any party gave any other explanation for Brashears' activities. This direct explanation for the Board's inspections is far more persuasive than any inference of retaliatory intent that might be drawn from their temporal proximity to HRH's reconsideration motion. "This is thus not a case in which the plaintiff and defendant each present plausible explanations for the facts alleged." Arpaio v. Obama, 797 F.3d 11, 25 (D.C. Cir. 2015), cert. denied, 136 S. Ct. 900, reh'g denied, 136 S. Ct. 1250 (2016). Rather, "[d]ismissal is required because the 'plausible alternative explanation'"—that, based on information about Scahill's presence at the Alibi, the Board was merely enforcing the conditions it had placed on HRH's license—"'is so convincing that [the] plaintiff's explanation is implausible.'" Id. (citation omitted); see Iqbal, 556 U.S. at 681–82; Morrow v. United States, 723 F. Supp. 2d 71, 77 (D.D.C. 2010) ("Where 'more likely explanations' than those alleged by the plaintiff exist, the Court should be wary of finding that the plaintiff's allegations have sufficiently nudged the claims into the realm of plausibility.").

The SAC also provides more detailed allegations regarding two show cause orders the Board issued to HRH on October 6 and November 7, 2016, charging HRH with violating its liquor

13

license. SAC ¶¶ 55, 57–59, 61–62. The Court had previously determined that the allegations regarding these orders did not adequately plead a First Amendment retaliation claim, Mem. Op. at 25–28, and the SAC does not remedy the prior complaint's defects. As noted in the Court's opinion on the motion to dismiss, the Board's October show cause order was too distant in time from the protected activity for which the order could have been in retaliation—HRH's May reconsideration motion and July appeal—to raise a plausible retaliation claim. See id. at 25–27 (citing BEG Invs., 144 F. Supp. 3d at 22–23 (noting that a period of one month or less "typically suffices" to raise a plausible inference of retaliation, and citing cases)). Notably, in contrast to the November order, HRH does not even attempt to plead retaliation as to the October order through temporal proximity. SAC ¶ 61.

As far as the November order goes, HRH's retaliation claim fails for the same two reasons it did previously. First, the party whose activity allegedly caused the retaliation (Scahill) is not the party against whom the Board allegedly retaliated (HRH). Id. HRH therefore cannot meet the first prong of the retaliation test: it cannot show that *it* engaged in any relevant protected activity. See Doe, 796 F.3d at 106. Nor does the SAC provide any factual allegations that explain why the Board would react to Scahill's protected activity by initiating enforcement proceedings against HRH, particularly given that the SAC also alleges that Scahill has no ownership stake in HRH. SAC ¶¶ 6, 12(g)–(k), 59, 61–64. Second, the record at the time of the Court's prior decision pointed to the "obvious alternative explanation" that the Board was acting lawfully in response to Brashears' investigatory efforts when it authorized both show cause orders. Mem. Op. at 27–28 (quoting Iqbal, 556 at 682). The July 19 Board Order only strengthens the inference that the Board was acting lawfully: it lays out the factual and procedural background that led to the show cause

orders, which indicates that the Board acted in response to Brashears' investigative finding that Scahill was illegally present and working at the Alibi. July 19 Board Order at 3–4 & ¶¶ 12–24.[4]

Given these factors, and making all reasonable inferences in favor of HRH, the SAC does not give rise to a plausible First Amendment retaliation claim as to either show cause order or the Board's investigations. See Iqbal, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8)); Arpaio, 797 F.3d at 25. Because the proposed SAC would not survive a motion to dismiss, HRH's motion to amend will be denied. Williams, 819 F.3d at 471.

## **CONCLUSION**

For the foregoing reasons, HRH's motion for reconsideration and to amend its complaint is denied. Plaintiffs have chosen not to amend their complaint with regard to anything other than their First Amendment retaliation claims and, based on what is already in the record, it difficult to see what set of facts plaintiffs could plead to allege a plausible retaliation claim. See Animal Legal

---

[4] HRH also alleges causation based on the fact that the Board did not issue either show cause order "within [thirty] days after it received evidence supporting its belief that violations . . . allegedly occurred," SAC ¶ 62, which plaintiffs allege the Board must do to have statutory authority to bring enforcement actions, id. ¶¶ 25, 58–59. HRH made this same objection before the Board, which acknowledged that it had issued the orders more than thirty days but less than sixty days after it actually received and reviewed Brashears' reports. July 19 Board Order ¶ 41–42, 46. As the Board noted, however, id. ¶¶ 43–45 & n.8, the time period within which the Board must issue a show cause order is not mandatory. Under D.C. law, "when a statute says that an agency 'shall' make a decision within a set period of time, that limit is generally considered 'directory rather than mandatory,'" Brown v. D.C. Pub. Emp. Relations Bd., 19 A.3d 351, 355 (D.C. 2011) (citation omitted), and "a statutory time limit for agency action which is not accompanied by attendant sanctions raises a rebuttable presumption that the time limitation is intended to be merely directory," id. at 356. The statute setting out the time limit here states that "the Board shall order the licensee or permittee . . . to appear" within thirty days, and does not create sanctions for failure to comply with the time limit. D.C. Code § 25–447(c). Delays may warrant dismissal of agency actions when "the agency's delay caused sufficient prejudice . . . to outweigh the normally prevailing interest in allowing the agency to act after the expiration of the time limit." Brown, 19 A.3d at 357. Here, however, the Board issued the show cause orders within a relatively short period of time after reviewing the relevant evidence, and there is no indication that the delay prejudiced plaintiffs. See July 19 Board Order ¶¶ 46–49. Even counting from the dates at which Brashears first found Scahill at the Alibi, the Board issued the notices within a timeframe the D.C. Court of Appeals has found to be reasonable. See Brown, 19 A.3d at 356–57 (collecting cases); Gallotham, Inc. v. D.C. Alcoholic Beverage Control Bd., 820 A.2d 530, 535 (D.C. 2003) (274-day delay non-prejudicial). The Board's delay, then, does not create a reasonable inference of retaliation.

Def. Fund, Inc. v. Perdue, 872 F.3d 602, 610 (D.C. Cir. 2017). The Court also notes that plaintiffs have filed a Notice of Appeal [ECF No. 19], but the D.C. Circuit will not have jurisdiction over any appeal until a final order is entered, Attias, 865 F.3d at 623. The Court will therefore dismiss this action, which will allow plaintiffs to appeal. A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: December 11, 2017